IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-02461-RBJ

REGGIE MCKOY,

      Plaintiff,

v.

CAROLYN COLVIN, Acting Commissioner of the Social Security Administration,

      Defendant.

---

## ORDER

---

      This matter is before the Court on review of the Commissioner's decision denying claimant Reggie McKoy's application for Social Security disability benefits.  Jurisdiction is proper under 42 U.S.C. § 405(g).  For the reasons explained below, the Court reverses and remands the Commissioner's decision.

## I. **Standard of Review**

      This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998).  A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record. . . ." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988).  Substantial evidence requires "more than a scintilla,

but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Evidence

is not substantial if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374

(10th Cir. 1992).

## II.  Facts

Mr. McKoy, who was born on October 27, 1949, lives in Colorado Springs, Colorado.

He has previously worked as a distribution clerk, merchandise displayer, and telephone solicitor.

### A.  Procedural History

On January 4, 2010, Mr. McKoy filed a Title II application for benefits based on

disability beginning on July 21, 2009.  The claim was initially denied on September 16, 2010.

The claimant then filed a request for a hearing, which was held on July 14, 2011 in front of

Administrative Law Judge Kathryn D. Burgchardt.  The ALJ denied the claimant's application

for benefits on September 19, 2011, and the Commission denied his request for review on July

12, 2013.  Mr. McKoy filed a timely appeal in this Court.

### B.  Medical History

The record contains evidence concerning the claimant's degenerative disc disease of the

cervical spine, degenerative disc disease of the lumbar spine, migraines, and residuals from a

cold weather injury related to combat duty.  *See* R. at 19.  Most relevant here, there is also

evidence related to Mr. McKoy's alleged depression and disabling pain, as well as evidence

concerning his credibility.

Beginning with the claimant's mental health, the ALJ mentioned that Mr. McKoy had

"had some depression" at the hearing.  R. at 39.  Mr. McKoy stated that he was not seeing a

psychologist or psychiatrist for any reason.  R. at 44.  An August 28, 2010 psychological exam

2

by Dr. Neufeld noted that the claimant reported that he felt sad and blue, experienced fatigue, had trouble with motivation, did not have trouble enjoying things, had felt like crying a few times, had decreased interest in sex, "maybe" had useless/worthless thoughts, sometimes felt hopeless, and did not have any suicidal thoughts or plans.  R. at 474.  Furthermore, although the claimant had not had any nightmares about a horrible or upsetting experience, he had thought about such an experience when he did not want to, had tried hard not to think about it, and had gone out of his way to avoid situations that reminded him of it.  R. at 474–75.  The report also states that Mr. McKoy was constantly watchful or on guard, but did not feel detached from others, activities, or his surroundings.  R. at 475.  Dr. Neufeld diagnosed the claimant with "major depression, mild" and an "anxiety disorder . . . with features of PTSD" and assigned a GAF score of 65.  R. at 476.  She noted that he had "developed medical problems and sustained injuries that have created . . . some degree of depression" and that he was "moderately to markedly impaired in persistence and pace due to his pain and physical limitations."  R. at 476.  The report further commented that Mr. McKoy was "a good candidate for mental health treatment including medication and counseling."  R. at 476.

Dr. Schumacher's consultative exam report also made findings about the claimant's mental health.  Having reviewed Dr. Neufeld's report, Dr. Schumacher concluded that Mr. McKoy's impairment in persistence and pace "apparently arises from attribution to physical problems.  From a mental standpoint, the [claimant's] cognitive functions are intact and limitations of his daily activities are due to claimed physical conditions."  R. at 63.  Additionally, he noted that the claimant's depression "is said to be mild and his mental condition is found to be nonsevere."  R. at 63.  Dr. Schumacher found that: (1) the claimant's restriction of activities of

daily living was mild, (2) his difficulties in maintaining social functioning were mild, (3) his difficulties in maintaining concentration, persistence, or pace were mild, and (4) he had no repeated episodes of decompensation.  R. at 64.  He concluded that Mr. McKoy did not have an impairment or combination of impairments that was severe.  R. at 64.

Turning to the claimant's reported disabling pain, Mr. McKoy stated at the hearing that he was going to physical therapy for his lower back pain.  R. at 43.  He also mentioned that he experiences back pain every day and sometimes cannot get out of bed because of it.  R. at 51.  Furthermore, the claimant testified that he has excruciating pain from migraines, which occur three to five times a day and could reach pain levels of 9/10 and 10/10.  R. at 50.  The headaches can sometimes last for an entire day.  R. at 50.  The ALJ noted at the hearing that Mr. McKoy had "had some neck pain, as well as back pain."  R. at 39.  However, the claimant also reported a fairly active lifestyle, stating that he often saw his four children and four grandchildren, lived by himself, drove a car, went to a senior center frequently, took his grandchildren to parks and a local amusement park, dusted his apartment, and loaded his dishwasher.  R. at 40–42, 48, 49.

Finally, the Court notes that a number of physicians questioned the claimant's credibility.  In his report, Dr. Schumacher found Mr. McKoy only "partially credible."  R. at 65.  At a VA Compensation and Pension Examination, completed by Dr. Hill on June 2, 2009, the doctor noted that he could not certify that the claimant's statements were true and correct and that, although he was not prepared to make an accusation that they were false, the prospect of monetary gain could influence the extent to which patients tell the truth.  R. at 313.  The Court notes, however, that this statement appears to reflect the doctor's general opinion about being asked to certify the truthfulness of patients' statements, not an observation about the claimant in

4

particular.  *See* R. at 313.  Lastly, Dr. Hodge noted that the claimant did not give full effort during an exam performed on August 19, 2010.  R. at 470.

### C.  The ALJ's Decision

The ALJ issued an unfavorable opinion after evaluating all of the evidence according to the Social Security Administration's standard five-step process.  At step one, she found that Mr. McKoy had not engaged in substantial gainful activity since July 21, 2009, the alleged onset date.  R. at 19.  Next, at step two, the ALJ found that the claimant had the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, migraines, and residuals from a cold weather injury.  R. at 19.  At step three, the ALJ concluded that Mr. McKoy did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. at 21.  She then found that the claimant had the residual functional capacity ("RFC") to perform light work, including the abilities to lift or carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk, with normal breaks, for a total of 6 hours in an 8-hour workday; sit, with normal breaks, for a total of 6 hours in an 8-hour workday; and perform pushing and pulling motions with his upper and lower extremities within the aforementioned weight restrictions (expect he was limited to frequent overhead reaching with the bilateral upper extremities).  R. at 22.  Turning to step four, the ALJ found that Mr. McKoy was capable of performing past relevant work as a distribution clerk and a telephone solicitor.  R. at 28.  Finally, at step five, she found that there were also other jobs in the national economy that he was capable of performing.  R. at 28.  She thus concluded that the claimant had not been under a disability.  R. at 30.

### III.  Discussion

The claimant contends that the ALJ made four errors in her opinion denying benefits: (1) she violated SSR 96-3p in finding that the claimant's mental impairments were not severe, (2) she failed to consider his mental impairments in assessing his RFC, (3) she did not consider the effects of limitations caused by claimant's pain, and (4) she violated SSR 82.62 in finding that the claimant was capable of performing past relevant work.  As explained below, the Court agrees with the second and fourth arguments.

### A.  The Finding that the Claimant's Mental Impairments are Not Severe

First, the claimant argues that the ALJ violated SSR 96-3p in her step two finding that his depression and anxiety were not severe impairments.  At step two, "[t]he Commissioner follows a special technique to evaluate the severity of mental impairments and their effect on the claimant's ability to work.  In applying the special technique, the ALJ must first decide whether the claimant has a medically determinable mental impairment." *Wells v. Colvin*, 727 F.3d 1061, 1068 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1)).  Here, the ALJ noted that the claimant had a "medically determinable impairment of depression."[1]  R. at 19.  After finding a mental impairment, the ALJ next must "rate the degree of the functional limitation resulting from the claimant's medically determinable mental impairments in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Wells*, 727 F.3d at 1068 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3)) (internal quotations omitted).  The ALJ performed

---

[1] Although the ALJ's opinion focuses primarily on the claimant's depression, it also cites Dr. Neufeld's diagnosis of an anxiety order.  R. at 20.  Thus the Court is satisfied that the ALJ's discussion at step two considered both Mr. McKoy's depression and his anxiety.

6

this analysis and found that the claimant's mental impairment causes no more than "mild" limitation in the first three areas and that there were "no" episodes of decompensation.  R. at 20–21.  She thus concluded that Mr. McKoy's depression was not a severe impairment.  R. at 21.

The claimant does not directly attack the ALJ's analysis under the framework laid out in *Wells*, but rather argues that she should have found his depression and anxiety to be severe impairments under SSR 96-3p, which states that "an impairment . . . is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is 'not severe' must be a slight abnormality . . . that has no more than a minimal effect on the ability to do basic work activities."  The claimant's brief also cites to Tenth Circuit case law for the proposition that step two "requires a 'de minimis' showing of impairment."  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).

Nothing that the claimant cites, however, undermines the ALJ's analysis, which carefully follows the law on evaluating mental impairments at step two.  The relevant regulations prescribe the framework that the ALJ used in rating the degree of functional limitation resulting from the claimant's depression; this is the specific process by which an adjudicator determines whether a mental impairment significantly limits an individual's abilities to do basic work activities, as required by SSR 96-3p.  *See* 20 C.F.R. §§ 404.1520a, 416.920a.  *Cf. Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170 (2007) (in general, a more specific regulation trumps a general one).  Thus the ALJ applied the correct legal standard.  Furthermore, the Court is satisfied that the ALJ cited substantial evidence in support of her analysis, including Dr. Schumacher's report, the claimant's own testimony, Dr. Neufeld's assessment, and the lack of any treatment for depression.  *See* R. at 20–21.  For these reasons, the Court finds that the ALJ

7

did not err in concluding that Mr. McKoy's mental impairments were not severe.

**B.   The Effect of the Claimant's Mental Impairments in the RFC Analysis**

Next, the claimant contends that the ALJ erred by failing to consider his mental

impairments in the RFC determination.  The Tenth Circuit has held that a finding that the

claimant's mental impairments are non-severe at step two "does not permit the ALJ simply to

disregard those impairments when assessing a claimant's RFC and making conclusions at steps

four and five.  In his RFC assessment, the ALJ must consider the combined effect of all

medically determinable impairments, whether severe or not."  *Wells*, 727 F.3d at 1068–69 (10th

Cir. 2013) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).  In the present case, the ALJ did

not discuss any mental impairments in her RFC analysis.[2]  *See* R. at 22–28.  However, "[an]

ALJ's failure to conduct a . . . particularized assessment of mental functions at step four [is]

harmless error [when there] is no substantial evidence that would allow a reasonable

administrative factfinder to include any mental limitations in [the] RFC."  *Alvey v. Colvin*, 536 F.

App'x 792, 795 (10th Cir. 2013).

The government argues that there is no substantial evidence in the record that would

allow a reasonable factfinder to find a mental impairment that limited Mr. McKoy's ability to

work; the Court, however, disagrees.  As an initial matter, the government's brief points to the

---

[2] The ALJ did state in her step two analysis that the RFC determination "reflects the degree of limitation the undersigned has found in the 'Paragraph B' mental function analysis."  R. at 21.  However, such conclusory language does not amount to a discussion of claimant's mental impairments in the RFC determination (indeed, the government does not even argue so in its brief, *see* ECF No. 15 at 12).  *See Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013).  Although the ALJ's opinion notes that RFC assessment requires a more detailed analysis than the step two severity analysis, there is no indication that the ALJ performed that required analysis.  *See* R. at 21, 22–28. As a district court in Kansas faced with the same boilerplate language put it, "[d]espite this boilerplate in the ALJ's decision, the court cannot find anything in the ALJ's decision at step four showing that he actually engaged in any analysis of mental functions and how they may be impacted (or not) by [the claimant's] medically determinable mental impairments." *Stookey v. Colvin*, No. 13-2172-SAC, 2014 WL 3611666, at *4 (D. Kan. July 22, 2014) (internal citations and quotations omitted).

ALJ's step two discussion of the claimant's depression, which relied heavily on Dr. Schumacher's finding that Mr. McKoy's impairment in persistence and pace "apparently arises from attribution to physical problems. From a mental standpoint, the [claimant's] cognitive functions are intact and limitations of his daily activities are due to claimed physical conditions." R. at 20, 63. Dr. Schumacher's conclusions were based on a review of Dr. Neufeld's report, which stated that the claimant "is moderately to markedly impaired in persistence and pace due to his pain and physical limitations." R. at 63, 476. However, Dr. Neufeld also noted that Mr. McKoy "has developed medical problems and sustained injuries that have created significant pain issues and some degree of depression," suggesting that although his depression may be caused by physical problems, it is nonetheless a separate, stand-alone impairment. R. at 476. This conclusion in Dr. Neufeld's report is evidence that could support the inclusion of mental limitations in the claimant's RFC.

Furthermore, Dr. Neufeld diagnosed the claimant with mild major depression and an anxiety disorder with features of PTSD. R. at 476. She also concluded that he was "a good candidate for mental health treatment including medication and counseling," and noted that the claimant felt sad and blue, experienced fatigue, had trouble with motivation, had felt like crying a few times, had decreased interest in sex, "maybe" had useless/worthless thoughts, and sometimes felt hopeless. R. at 474. Furthermore, the claimant had thought about a horrible or upsetting experience when he did not want to, had tried hard not to think about it, and had gone out of his way to avoid situations that reminded him of it. R. at 474–75. Dr. Neufeld assigned the claimant a GAF score of 65, which indicates some mild symptoms and some difficulty in

social, occupational, or school functioning.[3]  R. at 20, 476.

Given this evidence, the Court cannot conclude that there is not substantial evidence that would allow a reasonable administrative factfinder to include any mental limitations in the RFC, particularly when considered in combination with his other impairments.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."  *Wall*, 561 F.3d at 1052. Furthermore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Thus, although the record might support a finding that Mr. McKoy does not have any mental impairments that limit his ability to work, the Court is satisfied that there is substantial evidence that could support the opposite conclusion as well.  For this reason, the ALJ's failure to discuss the claimant's mental impairments in her RFC determination was not harmless error, and the Court must remand the decision on this basis.[4]

## C.   The Effect of the Claimant's Pain in the RFC Analysis

The claimant next argues that the ALJ failed to consider the effects of Mr. McKoy's limitations caused by his pain.  This appears to be an argument that the ALJ did not follow the correct legal standards in her RFC analysis; the claimant cites to Tenth Circuit case law and a Social Security Ruling.  The Court, however, finds that the ALJ correctly followed the applicable

---

[3] A GAF score of 65 is not sufficiently high to alleviate any possibility that the claimant's mental impairments could impact his ability to work. *See, e.g.*, *McCaffrey v. Astrue*, No. 10-CV-01943-PAB, 2011 WL 4536980, at *11 (D. Colo. Sept. 30, 2011).

[4] The government argues that the claimant failed to allege any mental impairments, even on questioning by his attorney. ECF No. 15 at 11.  Although the claimant's counsel certainly could have further explored the effects of Mr. McKoy's alleged mental impairments at the hearing, this argument is misplaced where, as here, the ALJ was clearly aware of evidence concerning the claimant's depression and anxiety.  The ALJ discussed this evidence extensively at step two of her analysis, *see* R. at 19–21; the government cannot argue that her failure to engage in the required analysis in determining Mr. McKoy's RFC is excused by his counsel's failure to bring the issue to the ALJ's attention.

legal standards.

First, the claimant points to the three-step analysis used in evaluating subjective

complaints of pain:

> A disability claimant's complaints of disabling pain are evaluated using the three-step analysis set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir.1987).  Under *Luna* an ALJ faced with a claim of disabling pain is required to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166–67 (10th Cir. 2012).  In the present case, the ALJ

found that the claimant had pain-producing impairments which could reasonably be expected to

cause the alleged symptoms, thus satisfying the first two steps of the *Luna* analysis.  *See* R. at 23.

She went on to find that "the claimant's statements concerning the intensity, persistence, and

limiting effect of these symptoms are not credible to the extent they are inconsistent with the

above RFC assessment."  R. at 23.  The ALJ reviewed numerous pieces of evidence in reaching

this conclusion, including both objective and subjective evidence.  *See* R. at 23–28.  Thus the

Court is satisfied that the ALJ's analysis follows the approach laid out in *Luna*.

The claimant also argues that the ALJ erred in finding his subjective complaints not

entirely credible.[5]  Claimant's brief cites to SSR 96-7p, which states that

> [i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and

---

[5] The ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effect of [his] symptoms are not credible to the extent they are inconsistent with the above RFC assessment."  R. at 23.

> persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

Claimant argues that because his statements are supported by objective medical evidence, the ALJ erred in disregarding them. ECF No. 14 at 12–13. However, that is not the standard. The quoted language states only that an individual's statements may not be disregarded "*solely* because they are not substantiated by objective medical evidence." SSR 96-7p (emphasis added).

Indeed, the ALJ did not rely solely on a lack of objective medical evidence, but rather also cited to other evidence in the record that undermined Mr. McKoy's credibility. Regarding the claimant's alleged limitations caused by pain, the ALJ noted the lack of any consistently reported neck or back symptoms and the fact that Mr. McKoy had not received any substantive treatment for such pain. R. at 23. As for the claimant's complaints about migraines, the ALJ's opinion again cites the lack of any treatment. R. at 26. Similarly with regard to Mr. McKoy's cold weather injury, the record did not contain any complaints of ongoing symptoms related to this injury nor any evidence of treatment, and the injury had not prevented him from working in the past. R. at 26. Moreover, the ALJ noted that the claimant reported a fairly active lifestyle and that several physicians suspected that the claimant was engaging in malingering or misrepresentation. R. at 27. Thus the ALJ considered various pieces of evidence beyond the lack of objective medical evidence, and it is clear that she did not disregard the claimant's subjective complaints solely on that basis.

For the reasons laid out above, the Court finds that the ALJ followed the applicable legal standards in considering the claimant's alleged pain and finding his complaints not entirely

credible.  Moreover, the ALJ's opinion cites substantial evidence in support of her findings

concerning the claimant's alleged pain.  Thus the Court declines to remand on this basis.

### D.   <u>The Finding that the Claimant is Capable of Performing Past Relevant Work</u>

Finally, the claimant argues that the ALJ failed to adhere to SSR 82-62 in finding that he

was capable of performing past relevant work because her opinion did not make the required

factual findings about the physical and mental demands of his past work.  SSR 82-62 requires an

ALJ to consider the "interaction of the limiting effects of the person's impairment(s) and the

physical and mental demands of his or her [past relevant work] to determine whether the

individual can still do that work."  In making a determination about the physical and mental

demands of the past work,

> [d]etailed information about strength, endurance, manipulative ability, mental
> demands and other job requirements must be obtained as appropriate. . . . In
> addition, for a claim involving a mental/emotional impairment, care must be taken
> to obtain a precise description of the particular job duties which are likely to
> produce tension and anxiety, e.g., speed, precision, complexity of tasks,
> independent judgments, working with other people, etc., in order to determine if
> the claimant's mental impairment is compatible with the performance of such
> work.

SSR 82-62.  The Tenth Circuit "has recognized the importance of these interrelated duties of

factual inquiry, detailed specification, and explicit comparison on a number of occasions."  *Jason*

*v. Chater*, 54 F.3d 787, 787 (10th Cir. 1995).

In the present case, the ALJ noted that the vocational expert ("VE") testified that the

claimant's RFC was within the requirements of his past relevant work.  R. at 28.  Indeed, the

VE's testimony to that effect constituted essentially the entire analysis of whether the claimant

could perform past relevant work.  *See* R. at 28.  Even assuming that the ALJ's RFC

determination was correct,[6] this limited analysis at step four is insufficient under Tenth Circuit precedent, which holds that "an expert [cannot] assume the *ALJ's* ultimate responsibility for determining whether [the] demands [of past relevant work] are within the claimant's capacities. Moreover, allowing the expert to do so would effectively remove the critical comparative assessment involved from judicial review." *Jason*, 54 F.3d at 787 (10th Cir. 1995) (emphasis in original). Indeed, "[r]equiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review." *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996). *See also Sissom v. Colvin*, 512 F. App'x 762, 770 (10th Cir. 2013). Here, the ALJ's brief discussion of the claimant's ability to perform past work—without any clear factual inquiry, detailed specification, or explicit comparison—does not comply with the applicable law.[7]

The Commissioner argues that even if the ALJ's step four analysis was flawed, the Court can nevertheless affirm the ALJ's decision on the basis of her unchallenged step five finding that the claimant could make a successful adjustment to other jobs in the national economy. Because the Court remands on the basis of the flawed RFC determination discussed above, it is unnecessary to address this alternative basis for upholding the decision.

**IV.  Conclusion**

The Court finds that the ALJ's opinion is flawed in its failure to discuss the claimant's mental impairments in the RFC analysis and the lack of detailed findings in the step four

---

[6] The Court notes that in addition to the failure to comply with SSR 82-62 described here, the step four analysis also must reflect any mental impairments that may be included in the claimant's RFC on remand.

[7] The government argues that the ALJ's analysis properly relies on the VE's testimony, citing *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003). In *Doyal*, however, the ALJ made specific findings about the requirements of the claimant's past relevant work. *See id.* at 760. Here, the ALJ made no such findings, instead relying solely on the VE's testimony that Mr. McKoy's RFC was within the requirements of his past relevant work.

14

analysis.  However, it is not clear that correction of these errors will necessarily change the

ALJ's conclusion that benefits should be denied, and thus the Court declines to award benefits at

this time.  *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).  Therefore, the decision

of the Commissioner is REVERSED and REMANDED for further findings.

DATED this 23rd day of February, 2015.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge